**MARC A. LIEBERMAN (SBN 157318)**
marc.lieberman@flpllp.com
**ALAN W. FORSLEY (SBN 180958)**
alan.forsley@flpllp.com
**FLP LAW GROUP LLP**
1875 Century Park East, Suite 2230
Los Angeles, California 90067
Telephone:  (310) 284-7350
Facsimile:  (310) 432-5999

Proposed general bankruptcy counsel
for 9301 Cherokee Lane, LLC

## UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 2:23-bk-16232-NB |
| | ) |
| 9301 CHEROKEE LANE, LLC, a | ) |
| Delaware limited liability company, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) **SUPPLEMENT TO DEBTOR'S** |
| | ) **APPLICATION FOR AUTHORITY TO** |
| | ) **EMPLOY FLP LAW GROUP LLP AS** |
| | ) **ITS GENERAL BANKRUPTCY AND** |
| | ) **REORGANIZATION COUNSEL;** |
| | ) **DECLARATIONS OF CODY HOLMES** |
| | ) **AND MARC A. LIEBERMAN IN** |
| | ) **SUPPORT THEREOF** |
| | ) |
| | ) |
| | ) [No Hearing Unless Requested; LBR 2014-1] |
| | ) |
| | ) |

        This pleading ("**Supplement**") supplements debtor and debtor-in-possession

9301 Cherokee Lane, LLC's ("**Debtor**") application to employ FLP Law Group

("**FLP**") as its general bankruptcy counsel (the "**Application**") [Doc 44] to address issues raised by the Office of the United States Trustee ("**OUST**") in a November 13, 2023 email to Debtor's proposed counsel.  The OUST articulated its concerns as follows:

1. The retainer will be paid by third party affiliates of the debtor's principal but there is no classification of these monies, i.e. will it be capital contribution to the debtor, post-petition loans, or some other form of agreement between the debtor and its principals.

2. The discussion regarding the receipt of monies from 3rd parties and the personal guaranty should be reviewed for potential conflicts and the statements required under Judge Bason's own court rules.  Please check his website for the relevant information he requires. There is also no justification stated for the draw down for the post-petition retainer (i.e., the types of factors discussed in *Knudsen*);

3. The application uses the term "material" to limit the connections they are disclosing – but the statute requires all connections to be disclosed, and does not leave it up to them to decide what is material;

4. The engagement letter states that the debtor will pay all costs, instead of reasonable costs awarded by the Court (this is a very minor point);

5. The prevailing party section in the engagement letter should not apply to fee disputes given Baker Botts;

6. There is no justification provided for the 1 percent per month interest charge on fees that remain unpaid for 30 days after the Court approves the fees.

*Supplement to Application to Employ FLP Law Group LLP as Debtor's General Bankruptcy Counsel*

**A.**    **Issue No. 1:  The treatment of the post-petition retainer received from Debtor's principal.**

All funds received by FLP from Debtor's principal will be treated by the Debtor as a capital contribution to the Debtor.  That way, the post-petition retainer will not negatively impact creditors.

**B.**    **Issue No. 2: Third party payment of post-petition retainer, the principal's personal guaranty, and the *Knudsen* factors.**

1.    **The third party payment of the post-petition retainer.**

The OUST points out that this Court has in other cases articulated specific concerns raised when a third party pays a debtor-in-possession's retainer.  See e.g. Judge Bason's tentative ruling on issues raised at a October 17, 2023 status conference in connection with debtor's application to employ general counsel in *In re Online Edugo, Inc.*, Chapter 11 Case No. 2:23-14459-NB.

Rule 1.8.6 of the California Rules of Professional Conduct (the **Rules**") states:

A lawyer shall not enter into an agreement for, charge, or accept compensation for representing a client from one other than the client unless:

(a)    There is no interference with the lawyer's independent professional judgment or with the lawyer-client relationship;

(b)    Information is protected as requested by Business and Professions Code §6068(c)(1) and Rule 1.6; and

(c)    The lawyer obtains the client's informed written consent at or before the time the lawyer has entered into the agreement for, charged or accepted the

3

compensation, or as soon thereafter as reasonably practicable, provided that no disclosure or consent is required if:

(1)    Nondisclosure of the compensation is otherwise authorized by law or a court order; or

(2) the lawyer is rendering legal service on behalf of any public agency or nonprofit organization that provides legal service to the other public agency. (Approved by the Cal. Supreme Court, Effective November 1, 2018) (https://www.calbar.ca.gov/Portals/0/documents/rules/Rule_ 1.8.6-Exec_Summary-Redline.pdf) (last checked 11/14/23).]

FLP believes that Rule 1.8.6 applies in the instant case and that Cody Holmes ("**Mr. Holmes**"), individually and on behalf of Holmes Capital Corporation ("**Holmes Capital**") is required to give his informed written consent both in connection with the proposed retainer deposit and in connection with the proposed personal guaranty, based on the following facts:

1.    The proposed post-petition retainer derives from three sources: (a) Holmes Capital, of which Mr. Holmes is the sole officer, director, and shareholder; (b) Mr. Holmes, the beneficial owner of Debtor through Holmes Capital; and (c) the proceeds of a pre-petition loan paid directly to Debtor on behalf of Mr. Holmes by his employer World Mechanical, Inc. ("**World Mechanical**"), $10,002 of which proceeds had been paid by World Mechanical directly to Debtor's original former proposed counsel Alexandre Cornelius (the "**Cornelius Firm**").[1]

//

//

---

[1] The Cornelius Firm filed the petition, schedules, and 7-Day Package, among other documents in the case.

4

*Supplement to Application to Employ FLP Law Group LLP as Debtor's General Bankruptcy Counsel*

2.      The Cornelius Firm subsequently transferred the funds to successor proposed general counsel Levene, Neale, Bender, Yoo & Golubchik, LLP (the "**Levene Firm**").[2]

3.      The Levene Firm transferred the $10,002 of funds to FLP after FLP substituted into the instant case. As set forth above, all of the foregoing funds (which total $25,000) have been earmarked by the third parties providing the funds solely for the payment of Debtor's attorney fees and costs.

4.      The entire retainer deposit will be treated by Debtor as capital contributions by Holmes Capital to Debtor, earmarked to pay FLP's allowed fees as its general bankruptcy counsel.

5.      The Application contemplates FLP receiving an additional $25,000 from Holmes Capital as a post-petition retainer, which funds will also be treated by Debtor as a capital contribution from Holmes Capital, also earmarked to pay FLP's allowed fees and costs as general bankruptcy counsel.

World Mechanical is Mr. Holmes' employer. However, Mr. Holmes has no interest in World Mechanical, which has no claim against Debtor based on its loan to Mr. Holmes. World Mechanical, however, is scheduled as having an unliquidated claim against Debtor of $75,000 based on "trade debt." FLP and Mr. Holmes acknowledge that World Mechanical's claim will be subjected to the same scrutiny as the claims of other creditors, as their fiduciary duties require it.

The engagement letter between Debtor and FLP ("**Retainer Agreement**") acknowledges the source of the post petition retainer and explicitly provides:

> "Cherokee alone shall be FLP's client in this matter. You [Mr. Holmes] individually will not be FLP's client, and there are no third party beneficiaries to this agreement."

---

[2] The Levene Firm prepared and filed Debtor's status conference report, but has not otherwise appeared in the case.

For the avoidance of doubt and to ensure compliance with Rule 1.8.6, in Mr. Holmes' attached declaration ("**Holmes Declaration**"), he affirms the foregoing facts and acknowledges on behalf of himself individually and on behalf of Holmes Capital his understanding that:

1. FLP's duties, including its duties of loyalty and confidentiality and its fiduciary duties, run solely to Debtor and not to Mr. Holmes individually or to Holmes Capital or to World Mechanical;

2. No one may interfere with FLP's independent professional judgment or with the lawyer-client relationship;

3. Information provided to FLP by Debtor is protected as required by Business and Professions Code §6068 ("**B&P §6068**"), which he has read and understood; and

4. As sole officer, director, and shareholder of Holmes Capital, he and Holmes Capital have fiduciary duties to the Debtor's estate and that they will consult independent counsel when appropriate to advise them regarding those duties.

In the Holmes Declaration, Mr. Holmes further acknowledges that he has had an adequate opportunity to consult independent counsel before executing his declaration and that he did in fact consult independent counsel before executing the Retainer Agreement.

2. **Mr. Holmes' personal guaranty**. Mr. Holmes' personal guaranty of FLP's allowed fees and costs implicate the same ethical issues as Mr. Holmes' and Holmes Capital's payment of FLP's retainer deposit. In his attached Declaration, Mr. Holmes acknowledges those issues and confirms his understanding that, as the authorized agent of Debtor, he will instruct FLP to carry out its duties as

Debtor's counsel and that he will put Debtor's interests above his own as required of him under the circumstances.

As a practical matter, Mr. Holmes' guaranty would only become an issue if the estate became administratively insolvent or the bankruptcy case were dismissed. Under the facts of this case and in light of Mr. Holmes' attached declaration, his personal guaranty by Debtor poses no conflict of interest for FLP.

3.    **The _Knudsen_ Factors**. In _In re Knudsen Corp._, 84 B.R. 668 (9th Cir. BAP 1988), the 9th Circuit Bankruptcy Appellate Panel set forth a three-factor test to apply when a court considers awarding interim compensation to professionals in cases involving large amounts of professional fees being incurred each month. In holding court approval unnecessary under the circumstances, the _Knudsen_ Court noted that "the case at bar is proceeding for the principal benefit of the secured creditor Citicorp" which advanced the fees, presumably subject to it security interest. _In re Knudsen_ at 672-673.

_Knudsen_ is inapplicable here because, unlike in _Knudsen_, FLP is not seeking interim compensation from funds derived from a pre-petition secured creditor, which might negatively impact unsecured creditors by increasing the amount of secured debt in the case. Rather, FLP is seeking Court permission to receive a post-petition retainer from Debtor's principal and beneficial owner that has been earmarked for payment of FLP's fees and which would be drawn down in accordance with OUST guidelines for retainers held by Debtor's counsel. Secured and unsecured creditors alike only benefit from such an arrangement, which would otherwise leave Debtor without counsel and in danger of losing its sole asset in a foreclosure to the holder of the first deed of trust.

_Supplement to Application to Employ FLP Law Group LLP as Debtor's General Bankruptcy Counsel_

**C.    Issue No. 3: FLP's lack of connections to the Debtor.**

The OUST takes issues with FLP qualifying the description of its relationship to the Debtor, pointing out that "the statute requires all connections to be disclosed, and does not leave it up to them to decide what is material." Fair enough.  Other than being selected by Debtor to be its general bankruptcy counsel and other than having received a portion of its proposed post-petition retainer into its trust account as described above and in the Application, FLP has **NO CONNECTIONS** to the Debtor.

**D.    Issue 4: Payment of costs**. The OUST points out that "the engagement letter states that the debtor will pay all costs, instead of reasonable costs awarded by the Court."  To be clear, FLP will not, under any circumstances, seek payment of unreasonable costs (or unreasonable fees).  FLP expects the Debtor to pay only reasonable fees and costs as awarded by the Court.  However, unlike the Application, the Retainer Agreement takes into account the possibility that the Debtor might not always be a debtor-in-possession.  To the extent that fees are incurred by Debtor if not in possession (e.g. if the case is converted or dismissed) and such costs (and fees) would not be subject to Court approval, Court approval would not be sought, unless the Court orders FLP to seek such approval.

**E.    Issue 5: The application of _Baker Botts_**.  In _Baker Botts, LLP v Asarco, LLC_, 576 U.S. ___ (2015) the Supreme Court held that 11 U.S.C. §331(a)(1) does not permit a bankruptcy court to award fees to professionals for defending fee applications. FLP will not seek Court approval of fees incurred in defending its fee application(s).  As set forth in the Application, to the extent of any conflict between the Retainer Agreement and the Application, the Application (and order thereon) controls.  Here again the Retainer Agreement contemplates a potentiality that could arise when the Debtor is no longer a debtor-in-possession.  With respect to potential

_Supplement to Application to Employ FLP Law Group LLP as Debtor's General Bankruptcy Counsel_

disputes that could arise and that are not subject to bankruptcy court jurisdiction (like disputes between the Debtor and counsel that arise after conversion or dismissal), the dispute resolution clause of the Retainer Agreement controls.

**F.    Issue No. 6: Justification for the interest provision**.  With respect to interest being payable on FLP's allowed fees, FLP is not asking to be treated by the Debtor any better than unsecured creditors, who are entitled to receive interest on their claims in the event the estate is a surplus estate.  *In re PG&E Corp.*, 46 F.4th 1047 (9th Cir. 2022), *reh'g denied*, No. 21-16043 (9th Cir. Oct. 5, 2022), *stayed pending petition for cert.*, No. 21-16043 (9th Cir. Oct. 27, 2022), ("[P]ursuant to the solvent-debtor exception, unsecured creditors possess an 'equitable right' to post-petition interest [under section 1124(1) of the Bankruptcy Code] when a debtor is solvent.").

The Retainer Agreement states that FLP's right to receive interest on its allowed fees is subordinated to the claims of unsecured creditors, whose allowed claims would need to be paid in full and with interest before FLP receives interest on its allowed fees.

In FLP's experience, it sometimes takes years for Debtor's counsel to be paid by the estate.  FLP's rates contemplate payment within a reasonable time after services are performed.  If funds are not available to pay FLP's fees at the time they are approved by the Court or the case is dismissed prior to FLP being paid, it is reasonable for FLP to receive reasonable interest on its allowed fees, payable either from a surplus estate or by the proposed guarantor.

DATED:  November 17, 2023

_____
Marc A. Lieberman, Esq., Proposed Counsel to
Debtor and Debtor-in-Possession 9301 Cherokee
Lane, LLC

*Supplement to Application to Employ FLP Law Group LLP as Debtor's General Bankruptcy Counsel*

# DECLARATION OF CODY HOLMES

I, Cody Holmes, declare as follows:

1.      I am the sole officer, director, and shareholder of Holmes Capital Corporation ("**Holmes Capital**"), managing member of debtor and debtor-in-possession 9301 Cherokee Lane, LLC ("**Debtor**"). As the sole principal of Holmes Capital, I am Debtor's sole beneficial owner. I have personal knowledge of the facts set forth herein and, if called to testify, could and would competently testify thereto. I have read the attached Supplement to Debtor's application for authority to employ FLP Law Group LLP as its general counsel ("**Supplement**").  Except as otherwise noted, all capitalized terms herein shall have the same meaning as in the Supplement.

2.      I am a graduate of the University of Southern California, where I received a Bachelor's Degree in real estate development and a Masters of Science in Finance. I am presently employed as the Chief Financial Officer of Shangri-La Industries, LLC ("**Shangri-La**"). I have no ownership interest in Shangri-La. Except as set forth herein, neither Shangri-La nor its affiliates has any connection to Debtor.

3.      I am represented by separate counsel (not FLP) in my business affairs and Shangri-La is represented by its own counsel (not FLP) in its affairs..

4.      $25,002 of the proposed post petition retainer paid to FLP derived from three sources: (a) me; (b) Holmes Capital; and (c) the proceeds of a pre-petition loan paid directly to Debtor on my behalf by my employer World Mechanical, $10,002 of which proceeds had been paid by World Mechanical directly to Debtor's original former proposed counsel, the Cornelius Firm.[3]

---

[3] The Cornelius Firm filed the petition, schedules, and 7-Day Package, among other documents in the case.

*Supplement to Application to Employ FLP Law Group LLP as Debtor's General Bankruptcy Counsel*

5.      The Cornelius Firm subsequently transferred the $10,002 to Debtor's successor proposed general counsel the Levene Firm.[4]

6.      The Levene Firm transferred the $10,002 to FLP *after* FLP substituted into the instant case as Debtor's proposed general counsel.  All of the foregoing funds (which total $25,000) were earmarked by the third parties providing the funds solely for the payment of Debtor's attorney fees and costs.

7.      The entire retainer deposit will be treated by Debtor as a capital contribution by Holmes Capital to Debtor, earmarked to pay FLP's allowed fees as its general bankruptcy counsel.

8.      The Application and Retainer Agreement contemplate FLP receiving an additional $25,000 from Holmes Capital as a post-petition retainer, which funds will also be treated by Debtor as a capital contribution from Holmes Capital, also earmarked to pay FLP's allowed fees and costs as general bankruptcy counsel.

9.      World Mechanical is a plumbing contractor that performed services to Debtor in connection with the development of the 9301 Cherokee Lane Property (the "**Property**").  World Mechanical is an affiliate of Shangri-La.  I have no ownership interest in World Mechanical, and World Mechanical has no claim against Debtor based on the above-described loan to me.  World Mechanical, however, holds a $75,000 unliquidated claim against Debtor based on the services it provided at the Property.  As a fiduciary for the Debtor, I have instructed FLP to give World Mechanical's claim the same scrutiny as the claims of other creditors, as their fiduciary duties to Debtor's estate require.

10.     I have read and understand Rule 1.8.6, a copy of which is attached hereto as **Exhibit "1."** I will instruct FLP in my capacity as the sole officer of Debtor's sole member-manager and not in my individual capacity, and, as a fiduciary

---

[4] The Levene Firm prepared and filed Debtor's status conference report, but has not otherwise appeared in the case.

*Supplement to Application to Employ FLP Law Group LLP as Debtor's General Bankruptcy Counsel*

myself, I will put Debtor's interests before my own. I will also ensure that there will be no interference with FLP's lawyer-client relationship with the Debtor.  I will also ensure that FLP's independent professional judgment will not be affected by my relationship to Shangri-La, World Mechanical or Holmes Capital.  I understand that information received by FLP is to be protected as requested by Business and Professions Code §6068(c)(1) ("**B&P §6068**"), a copy of which is attached as **Exhibit "2"** and which I have read and understood.

For the avoidance of doubt, and to ensure compliance with Rule 1.8.6, I acknowledge on behalf of myself individually, Holmes Financial, Shangri-La, and World Mechanical that:

5. FLP's duties, including its duties of loyalty and confidentiality and its fiduciary duties, run solely to Debtor and not to myself individually, Holmes Capital, World Mechanical, or Shangri-La;

6. No one may interfere with FLP's independent professional judgment or with its lawyer-client relationship with Debtor;

7. Information provided to FLP by Debtor is protected as required by B&P §6068 which I have read and understood; and

8. As sole officer, director, and shareholder of Holmes Capital, I and Holmes Capital have fiduciary duties to the Debtor's estate and that we will consult independent counsel when appropriate to advise us regarding those duties.

11. FLP has Debtor's informed, written consent to accept payment of the $50,000 as described above.  In giving this consent, I have in fact consulted with independent counsel prior to executing the Retainer Agreement.  Those consultations included a discussion of my duties to Debtor's estate as the sole beneficial owner of Debtor.  Further, I have had an adequate opportunity to consult independent counsel before executing this declaration.

*Supplement to Application to Employ FLP Law Group LLP as Debtor's General Bankruptcy Counsel*

12.     I understand that my personal guaranty of FLP's allowed fees and costs implicate the same ethical issues as Mr. Holmes' and Holmes Capital's payment of FLP's retainer deposit. I acknowledge those issues and understanding that, as the authorized agent of Debtor, I will instruct FLP to carry out its duties as Debtor's counsel and that I will put Debtor's interests above my own as required under the circumstances.

13.     After investigation that included a search of my contacts database, I have determined that FLP has no connections to the Debtor, Shangri-La, Holmes Capital, or to me. FLP has represented to me that it has no connections to Debtor, Shangri-La, Holmes Capital, or to me.

I declare under penalty perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 16 day of November, 2023 at Los Angeles, California.

Cody Holmes

*Supplement to Application to Employ FLP Law Group LLP as Debtor's General Bankruptcy Counsel*

## DECLARATION OF MARC A. LIEBERMAN

I, Marc A. Lieberman, declare as follows:

1.      I am an attorney duly licensed to practice law before all courts in the State of California and before this Court.  I am a principal in the law firm of FLP Law Group LLP ("**FLP**"), proposed counsel for debtor and debtor-in-possession 9301 Cherokee Lane, LLC ("**Debtor**").   I have personal knowledge of the facts stated herein, and if called, could and would testify competently thereto.  Except as otherwise noted, all capitalized terms herein shall have the same meaning as in the Supplement and in the Declaration of Cody Holmes.

2.      The Retainer Agreement acknowledges the source of the post-petition retainer and explicitly provides:

> "Cherokee alone shall be FLP's client in this matter. You [Mr. Holmes] individually will not be FLP's client, and there are no third party beneficiaries to this agreement."

3.      Mr. Holmes has affirmed to me his understanding that FLP's duties, including its duties of loyalty and confidentiality and its fiduciary duties, run solely to Debtor and not to Mr. Holmes individually or to Holmes Capital or to World Mechanical.  Mr. Holmes acknowledges that, as sole officer, director, and shareholder of Holmes Capital, he and Holmes Capital have fiduciary duties to the Debtor's estate and that they will consult independent counsel when appropriate to advise them regarding those duties.

4.      FLP's Retainer Agreement with Debtor and the Application both make clear that FLP's duty runs to Debtor alone and not to Mr. Holmes. As a practical matter, Mr. Holmes's guaranty would only become an issue if the estate became administratively insolvent or the bankruptcy case were dismissed.  Under the facts of

*Supplement to Application to Employ FLP Law Group LLP as Debtor's General Bankruptcy Counsel*

this case, the personal guaranty by Debtor's sole beneficial owner raises no conflicts and is an expression of his confidence in Debtor's ability to successfully reorganize.

5.    FLP seeks Court permission to receive a post-petition retainer from Debtor's principal and beneficial owner that has been earmarked for payment of FLP's fees and which would be drawn down in accordance with OUST guidelines for retainers held by Debtor's counsel.  Secured and unsecured creditors alike only benefit from such an arrangement, which would otherwise leave Debtor without counsel and in danger of losing its sole asset in a foreclosure to the holder of the first deed of trust.

6.    Other than being selected by Debtor to be its general bankruptcy counsel and other than having received a portion of its proposed post-petition retainer into its trust account as described above and in the Application, FLP has no connections to the Debtor.

7.    FLP will not, under any circumstances, seek payment of unreasonable costs (or unreasonable fees).  FLP expects the Debtor to pay only reasonable fees and costs as awarded by the Court.  However, unlike the Application, the Retainer Agreement takes into account the possibility that the Debtor might not always be a debtor-in-possession.  To the extent that fees are incurred by Debtor if not in possession (e.g. if the case is converted or dismissed) and such costs (and fees) would not be subject to Court approval, Court approval would not be sought, unless the Court orders FLP to seek such approval.

8.    FLP will not seek Court approval of fees incurred in defending its fee application(s).  As set forth in the Application, to the extent of any conflict between the Retainer Agreement and the Application, the Application (and order thereon) controls.  Here again the Retainer Agreement contemplates a potentiality that could arise when the Debtor is no longer a debtor-in-possession.  With respect to potential disputes that could arise and that are not subject to bankruptcy court jurisdiction (like

disputes between the Debtor and counsel that arise after conversion or dismissal), the dispute resolution clause of the Retainer Agreement controls.

9. With respect to interest being payable on FLP's allowed fees, FLP is not asking to be treated by the Debtor any better than unsecured creditors, who are entitled to receive interest on their claims in the event the estate is a surplus estate.

10. The Retainer Agreement states that FLP's right to receive interest on its allowed fees is subordinated to the claims of unsecured creditors, whose allowed claims would need to be paid in full and with interest before FLP receives interest on its allowed fees.

11. In my experience, it sometimes takes years for Debtor's counsel to be paid by the estate. FLP's rates contemplate payment within a reasonable time after services are performed. If funds are not available to pay FLP's fees at the time they are approved by the Court or the case is dismissed prior to FLP being paid, it is reasonable for FLP to receive reasonable interest on its allowed fees, payable either from a surplus estate or by the proposed guarantor.

I declare under penalty perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 17 day of November, 2023 at Los Angeles, California.

MARC A. LIEBERMAN

*Supplement to Application to Employ FLP Law Group LLP as Debtor's General Bankruptcy Counsel*

# EXHIBIT 1

The State Bar *of California*

## Rule 1.8.6 Compensation from One Other than Client
## (Rule Approved by the Supreme Court, Effective November 1, 2018)

A lawyer shall not enter into an agreement for, charge, or accept compensation for representing a client from one other than the client unless:

(a)     there is no interference with the lawyer's independent professional judgment or with the lawyer-client relationship;

(b)     information is protected as required by Business and Professions Code section 6068, subdivision (e)(1) and rule 1.6; and

(c)     the lawyer obtains the client's informed written consent* at or before the time the lawyer has entered into the agreement for, charged, or accepted the compensation, or as soon thereafter as reasonably* practicable, provided that no disclosure or consent is required if:

   (1)     nondisclosure or the compensation is otherwise authorized by law or a court order; or

   (2)     the lawyer is rendering legal services on behalf of any public agency or nonprofit organization that provides legal services to other public agencies or the public.

**Comment**

[1]     A lawyer's responsibilities in a matter are owed only to the client except where the lawyer also represents the payor in the same matter.  With respect to the lawyer's additional duties when representing both the client and the payor in the same matter, see rule 1.7.

[2]     A lawyer who is exempt from disclosure and consent requirements under paragraph (c) nevertheless must comply with paragraphs (a) and (b).

[3]     This rule is not intended to abrogate existing relationships between insurers and insureds whereby the insurer has the contractual right to unilaterally select counsel for the insured, where there is no conflict of interest. (See *San Diego Navy Federal Credit Union v. Cumis Insurance Society* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494].).

[4]     In some limited circumstances, a lawyer might not be able to obtain client consent before the lawyer has entered into an agreement for, charged, or accepted compensation, as required by this rule.  This might happen, for example, when a lawyer is retained or paid by a family member on behalf of an incarcerated client or in certain commercial settings, such as when a lawyer is retained by a creditors' committee involved in a corporate debt restructuring and agrees to be compensated for any services to be provided to other similarly situated creditors who have not yet been identified.  In such limited situations, paragraph (c) permits the lawyer to comply with this rule as soon thereafter as is reasonably* practicable.

[5]     This rule is not intended to alter or diminish a lawyer's obligations under rule
5.4(c).

# EXHIBIT 2



# BUSINESS AND PROFESSIONS CODE - BPC

## DIVISION 3. PROFESSIONS AND VOCATIONS GENERALLY [5000 - 9998.11]  *( Heading of Division 3 added by Stats. 1939, Ch. 30. )*

### CHAPTER 4. Attorneys [6000 - 6243]  *( Chapter 4 added by Stats. 1939, Ch. 34. )*

### ARTICLE 4. Admission to the Practice of Law [6060 - 6069]  *( Article 4 added by Stats. 1939, Ch. 34. )*

It is the duty of an attorney to do all of the following:

**6068.**  (a) To support the Constitution and laws of the United States and of this state.

(b) To maintain the respect due to the courts of justice and judicial officers.

(c) To counsel or maintain those actions, proceedings, or defenses only as appear to him or her legal or just, except the defense of a person charged with a public offense.

(d) To employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law.

(e) (1) To maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.

(2) Notwithstanding paragraph (1), an attorney may, but is not required to, reveal confidential information relating to the representation of a client to the extent that the attorney reasonably believes the disclosure is necessary to prevent a criminal act that the attorney reasonably believes is likely to result in death of, or substantial bodily harm to, an individual.

(f) To advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he or she is charged.

(g) Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest.

(h) Never to reject, for any consideration personal to himself or herself, the cause of the defenseless or the oppressed.

(i) To cooperate and participate in any disciplinary investigation or other regulatory or disciplinary proceeding pending against himself or herself. However, this subdivision shall not be construed to deprive an attorney of any privilege guaranteed by the Fifth Amendment to the Constitution of the United States, or any other constitutional or statutory privileges. This subdivision shall not be construed to require an attorney to cooperate with a request that requires him or her to waive any constitutional or statutory privilege or to comply with a request for information or other matters within an unreasonable period of time in light of the time constraints of the attorney's practice. Any exercise by an attorney of any constitutional or statutory privilege shall not be used against the attorney in a regulatory or disciplinary proceeding against him or her.

(j) To comply with the requirements of Section 6002.1.

(k) To comply with all conditions attached to any disciplinary probation, including a probation imposed with the concurrence of the attorney.

(l) To keep all agreements made in lieu of disciplinary prosecution with the State Bar.

(m) To respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services.

(n) To provide copies to the client of certain documents under time limits and as prescribed in a rule of professional conduct which the board shall adopt.

(o) To report to the State Bar, in writing, within 30 days of the time the attorney has knowledge of any of the following:

(1) The filing of three or more lawsuits in a 12-month period against the attorney for malpractice or other wrongful conduct committed in a professional capacity.

(2) The entry of judgment against the attorney in a civil action for fraud, misrepresentation, breach of fiduciary duty, or gross negligence committed in a professional capacity.

(3) The imposition of judicial sanctions against the attorney, except for sanctions for failure to make discovery or monetary sanctions of less than one thousand dollars ($1,000).

(4) The bringing of an indictment or information charging a felony against the attorney.

(5) The conviction of the attorney, including any verdict of guilty, or plea of guilty or no contest, of a felony, or a misdemeanor committed in the course of the practice of law, or in a manner in which a client of the attorney was the victim, or a necessary element of which, as determined by the statutory or common law definition of the misdemeanor, involves improper conduct of an attorney, including dishonesty or other moral turpitude, or an attempt or a conspiracy or solicitation of another to commit a felony or a misdemeanor of that type.

(6) The imposition of discipline against the attorney by a professional or occupational disciplinary agency or licensing board, whether in California or elsewhere.

(7) Reversal of judgment in a proceeding based in whole or in part upon misconduct, grossly incompetent representation, or willful misrepresentation by an attorney.

(8) As used in this subdivision, "against the attorney" includes claims and proceedings against any firm of attorneys for the practice of law in which the attorney was a partner at the time of the conduct complained of and any law corporation in which the attorney was a shareholder at the time of the conduct complained of unless the matter has to the attorney's knowledge already been reported by the law firm or corporation.

(9) The State Bar may develop a prescribed form for the making of reports required by this section, usage of which it may require by rule or regulation.

(10) This subdivision is only intended to provide that the failure to report as required herein may serve as a basis of discipline.

*(Amended by Stats. 2018, Ch. 659, Sec. 50. (AB 3249) Effective January 1, 2019.)*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

FLP LAW GROUP LLP, 1875 Century Park East, Suite 2230, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **SUPPLEMENT TO DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY FLP LAW GROUP LLP AS ITS GENERAL BANKRUPTCY AND REORGANIZATION COUNSEL; DECLARATIONS OF CODY HOLMES AND MARC A. LIEBERMAN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 17, 2023,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Alexandre I Cornelius**    cornelius@thecalaw.com,
  alex.cornelius100@gmail.com;crawford@thecalaw.com;officemgr@thecalaw.com;kmurphy@thecalaw.com
- **Dare Law**    dare.law@usdoj.gov
- **Marc A Lieberman**    marc.lieberman@flpllp.com, safa.saleem@flpllp.com,addy@flpllp.com
- **Wayne R Terry**    wterry@hemar-rousso.com
- **Jennifer R Tullius**    jtullius@tulliuslaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page

II.  **SERVED BY UNITED STATES MAIL**:
On **November 17, 2023,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 17, 2023 | SAFA SALEEM | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**In re 9301 Cherokee Lane, LLC**
**USBC Case No. 2:23-bk-16232-NB**

Service List

BMO Bank N.A.
c/o Hermar, Rousso & Heald, LLP
15910 Ventura Blvd., 12th Floor
Encino, CA 91436-2802

BMO Haris Bank, N.A.
Attn. Chris Foltman
111 W. Monroe Street 4E
Chicago, IL 60603-4096

California TD Specialists, as Trustee
Attn: Patricio S. Ince, VP
8190 E. Kaiser Blvd.
Anaheim Hills, CA 92808-2215

Jose Garza
1238 Aldenville Ave.
Covina, CA 91722-1526

LADWP
PO Box 30808
Los Angeles, CA 90030-0808

Leeger Architecture
PO Box 2310
Del Mar, CA 92014-1610

Private Mortgage Fund, LLC
Attn: Ed Fischer
23586 Calabasas Rd., Suite 100
Calabasas, CA 91302-1322

Quarles & Brady LLP
Jason Curry
One Rennaissance Square
Two North Central Ave., Ste. 600
Phoenix, AZ 850094-2322

Southern California Gas Company
PO Box C
Monterey Park, CA 91754-0932

The Island Pool Service
14276 Berg Street
Sylmar, CA 91342-4127

Tullius Law Group
Attn: Jennifer Tullius
515 Flower Street, 18th Floor
Los Angeles, CA 90071-2231

World Mechanical, Inc.
660 S. Figueroa St., Suite 1888
Los Angeles, CA 90017-3433